## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| | : |
| In re: | :   Chapter 13 |
|     ROBERT REVELLE, JR., and | : |
|     ENSA REVELLE, | : |
|         Debtor | :   Case No. 17-11682 (BLS) |
| | : |
| | :   Docket No. 90 |

Elaina L. Homes, Esquire
Doroshow Pasquale Krawitz & Bhaya
1202 Kirkwood Highway
Wilmington DE 19805

*Counsel for Debtor*

Catherine Di Lorenzo, Esquire
Stern & Eisenberg
500 Creek View Road
Suite 304
Newark, DE  19711

*Counsel for Deutsche Bank National Trust
Company*

### <u>MEMORANDUM OPINION</u>

The matter before the Court is the Debtors' Substantive Objection to Claim No. 6 (the

"Claim Objection"),[1] in which the Debtors seek a ruling from this Court that they may cram

down the fully matured second mortgage obligation against their home.  The Creditor[2] objects to

this relief primarily on equitable grounds, arguing that cram-down of its claim is barred by

principles of collateral estoppel and *res judicata*, or the doctrine of laches.  For the reasons that

follow, the Court will sustain the Claim Objection, in part, by (i) rejecting the Creditor's

equitable defenses, and (ii) as to the threshold issue identified by the parties, the Court concludes

---

[1] Docket No. 90.
[2] Deutsche Bank National Trust Company, as certificate trustee on behalf of Bosco Credit II Trust Series 2010-1, (the "Creditor") filed Claim No. 6 on September 27, 2017.

that the Creditor's secured claim falls within § 1322(c)(2) and may be crammed down under § 1325(a)(5) and § 506(a).

## Background

The Debtors own a home at 997 Rue Madora Drive, Bear, Delaware (hereinafter the "Property"). It is their principal residence. The record reflects that there are two mortgages on the Property.[3] MidFirst Bank has filed a claim in this case asserting a first mortgage in the amount of $104,803.05 (the "First Mortgage"). The Creditor filed claim no. 6 (the subject of this Claim Objection) asserting a second mortgage in the total amount of $48,754.62. The Creditor's second mortgage on the Property fully matured in August 2018, during the course of this current Chapter 13 case.

The Debtors previously filed a Chapter 13 case in 2010[4] and the record reflects that the Debtors did not object to the Creditor's second mortgage claim in that case. Instead, the confirmed Chapter 13 plan in the 2010 bankruptcy case (the "2010 Plan") provided for regular payments of that obligation. The Debtors completed their payments under the confirmed 2010 Plan and received a discharge on January 21, 2016.

The Debtors commenced this Chapter 13 case on August 7, 2017. At the outset of this case, the Debtors filed a proposed plan, which was confirmed by the Court on an interim basis on November 20, 2017.[5] The original plan proposed by the Debtors acknowledged the Creditor's second mortgage claim and provided for regular payments thereon.[6] The Debtors' interim-

---

[3] The Creditor argues that the Debtors have failed to disclose a third mortgage on the Property based on a "HUD loan that was given to the Debtors because of their loan modification." Creditor's Response, D.I. 108, at p. 8. The Creditor contends that the Debtor's failure to disclose or provide for any treatment of the third mortgage in their Plan demonstrates the Debtors' bad faith. In their reply, the Debtors "deny the Creditor's assertions of bad faith and agree to seek the avoidance of this lien in an amended Plan." Debtors' Reply, D.I. 110, p. 12. The existence or proposed treatment of a third mortgage on the Property does not affect the Court's decision herein.
[4] Case No. 10-10821 (BLS).
[5] Docket No. 20.
[6] Docket No. 17.

confirmed plan has been modified several times,[7] but has never been confirmed on a final basis by the Court due to (initially) pending accounting disputes about amounts owed to the Creditor and (subsequently) the Debtors' pivot to a request for cram-down of the Creditor's second mortgage claim.

### The Parties' Positions

The Debtors contend that Creditor's claim can be crammed down in a Chapter 13 plan notwithstanding the anti-modification provisions of 11 U.S.C. § 1322(b). Specifically, since the second mortgage fully matured approximately a year into this Chapter 13 case, the Debtors assert that this liability may be crammed down to the value (if any) of the secured portion of the claim under the provisions of Bankruptcy Code §§ 1322(c)(2) and 506(a)(1).

The Creditor contends that the Debtors' prior conduct should bar them from seeking to cram down the claim. First, the Creditor notes that its claim was timely filed in the Debtors' 2010 bankruptcy case and was not objected to in that proceeding. Thus, the Creditor contends that the Debtors acknowledged the debt and in fact committed to payment of the claim through their confirmed Chapter 13 plan. Second, the Creditor notes that we are several years into a new bankruptcy case and only now are the Debtors objecting to its claim. In a nutshell, the Creditor asserts that either the Debtors' failure to object to its claim in the prior bankruptcy, or at the outset of this bankruptcy, should result in a ruling by this Court that the Debtors are estopped from challenging the claim. Alternatively, the Creditor argues that the multi-year delay in this case in bringing an objection to the Claim is an unreasonable delay and should be barred on the principles of laches.

---

[7] See Docket Nos. 28, 36, 51, 55, 60, 71, 95, and 112.

This matter has been fully briefed and argued. The Court will address first the Creditor's defenses of collateral estoppel, *res judicata*, and laches, and then turn to the substantive question of whether the second mortgage can be crammed down.

## Jurisdiction

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. This Court has jurisdiction to decide this claim objection pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K).

## Legal Standard – Claim Objections

The burden of proof for a claim filed in a bankruptcy proceeding "rests on different parties at different times."[8] Initially, the claim holder must establish the prima facie validity of the claim.[9] Bankruptcy Rule 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure (i.e., includes the facts and documents necessary to support the claim), constitutes prima facie evidence of the validity and amount of the claim.[10] The claim objector must then produce evidence that, "if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."[11] At that point, the burden shifts back to the claim holder to prove the validity of the claim by a preponderance of the evidence. [12] The ultimate burden of persuasion rests on the claim holder.[13]

---

[8] *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).
[9] *Id.*
[10] Fed. R. Bankr. P. 3001(f). *In re Samson Res. Corp.*, 569 B.R. 605, 615 (Bankr. D. Del. 2017).
[11] *Allegheny*, 954 F.2d at 173.
[12] *Id.* at 174.
[13] *Samson Res.*, 569 B.R. at 615.

**Discussion**

As noted, the Creditor places significant weight on the Debtors' conduct in their 2010 and 2017 bankruptcy cases.  The Debtors filed and obtained confirmation of the 2010 Plan that provided for payment of the Creditor's claim and the Debtors did not object in that case to the Creditor's filed proof of claim.  Similarly, in the present case, the Debtors filed a plan admitting the Creditor's claim and providing for its treatment.  Having previously acknowledged the validity of the debt in both the 2010 and 2017 cases, the Creditor contends that Debtors should be prevented from now challenging the Claim under principles of collateral estoppel and *res judicata*.

Collateral estoppel (or issue preclusion) bars relitigation of an issue when (i) the identical issue was previously adjudicated; (ii) the issue was actually litigated; (iii) the previous determination was necessary to the decision; and (iv) the party being precluded from relitigating the issue was fully represented in the prior action.[14]  The Third Circuit also considers whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action" and "whether the issue was determined by a final and valid judgment."[15]

*Res judicata* precludes a party from re-litigating claims that were or could have been asserted in a prior proceeding.[16]  The doctrine requires three distinct factors to apply:  (i) a final judgment on the merits in a prior action; (ii) that involves the same parties or their privies; and (iii) a subsequent suit based upon the same cause of action.[17]

---

[14] *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (citing *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001)).

[15] *Id.* (citations omitted).

[16] *In re USN Commc'n, Inc.*, 280 B.R. 573, 586 (Bankr. D. Del 2002).

[17] *Id.*

There is no meaningful dispute that confirmation of the 2010 Plan is a final judgment on the merits,[18] and it is apparent that the current cases involve the same parties as the 2010 case. However, it does not appear that the current cram-down dispute involves an issue that was actually decided, or that could have been brought, in the 2010 bankruptcy case.

The timing here is critical.  The Debtors filed a Chapter 13 case in 2010 and obtained confirmation of a 5-year plan that acknowledged Creditor's secured claim for the second mortgage.  The record reflects that the second mortgage did not fully mature until August 6, 2018,[19] long after completion of the 2010 Plan.[20] The Debtors could not have sought to cram down the second mortgage in the 2010 case because the anti-modification provisions of § 1322(b) would have precluded such relief as a matter of law.  Accordingly, the Court cannot find that the instant claim objection is an issue which was actually litigated or could have been litigated in the 2010 bankruptcy case.

The fact that the mortgage fully matured during the pendency of this case gives rise to an opportunity to seek cram down that was simply not available (and not sought) in the 2010 bankruptcy case.   On November 20, 2017, the Court entered an order confirming the Debtors' First Amended Plan *on an interim basis* and scheduling a final hearing on confirmation.[21]  The First Amended Plan did not seek to cram down the Creditor's claim.[22] The Debtors filed several amendments to their Chapter 13 plan, and the final confirmation hearing has been continued numerous times.  Because the Court has not entered a final judgment on the merits with respect

---

[18] *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989) ("Under § 1327, a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation.").

[19] Docket No. 68, ¶ 3.

[20] The Debtors filed a Certification of Plan Completion and Request for Discharge in the 2010 bankruptcy case on October 21, 2015, and the Notice of Consummation of the Chapter 13 Plan was filed on December 16, 2015. The Order of Discharge for the 2010 case  was entered on January 21, 2016.

[21] Docket No. 20.  On December 6, 2017, the Court entered an Order approving the Chapter 13 Trustee's Motion to Allow Plan Distributions under the interim Chapter 13 Plan.  Docket No. 23.

[22] Docket No. 17.

to the Debtors' Chapter 13 Plan, the interim confirmation order has no collateral estoppel or *res judicata* effect on the current dispute between the Debtors and the Creditor.

The Debtors, therefore, are not barred under principles of collateral estoppel or *res judicata* from prosecuting their Claim Objection.

The Creditor also argues that laches prevents the Debtors from asserting their Claim Objection after three years and numerous prior plans filed in this case that did not attempt to cram-down the Creditor's lien. The equitable doctrine of laches requires the following elements: (1) the delay in assertion of a claim; (2) the delay is inexcusable; and (3) undue prejudice results from the delay."[23]   The doctrine comes into play when a party's position or rights are so prejudiced by the length of an inexcusable delay that it would be unjust to permit assertion of the cause of action. Laches is an equitable defense that requires a fact-specific analysis.[24]

Considering the undisputed facts before the Court, the Court concludes that the Creditor's laches argument must fail. The Court acknowledges that a significant amount of time has passed between the filing of the case in 2017 and the filing of the Claim Objection. Nevertheless, there has been no showing of material prejudice to the Creditor arising from the Debtors' delay.[25]  To establish "material prejudice," a defendant must show either evidentiary prejudice or economic prejudice.[26]  "Evidentiary prejudice may arise where the delay has curtailed the defendant's ability to present a full and fair defense on the merits due to the loss of evidence, the death of a

---

[23] *In re Energy Future Holdings Corp.*, 561 B.R. 630, 645 (Bankr. D. Del. 2016). "Laches is defined as 'the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar.'" *McKesson Info. Sol. LLC v. Trizetto Grp., Inc.*, 426 F.Supp.2d 203, 208 (D. Del. 2006).

[24] *McKesson*, 426 F.Supp.2d at 209 ("The application of the defense of laches is committed to the sound discretion of the district court. Because it is equitable in nature, 'mechanical rules' do not govern its application. Instead, the court must consider all of the facts and circumstances and weigh the equities of the parties.")

[25] The Creditor questions the good faith of the Debtors' amended plan, but this issue is more appropriately addressed at confirmation.

[26] *McKesson*, 426 F.Supp.2d at 208.

witness, or the unreliability of memories."[27] The Creditor argues that the passage of time could unfairly prejudice its ability to value the Property as of the petition date and could produce an inaccurate valuation. The Court disagrees. Based on the Court's experience in reviewing and considering property valuations offered in other cases, the Court is confident that the parties will be able to look back and correctly determine the Property's value. The Debtors have made payments on the second mortgage under their interim confirmed plan in this case and to the extent that the Creditor wishes to litigate either cram-down or valuation, its ability to do so will be largely unaffected by the passage of time.

"Economic prejudice arises where a defendant suffers the loss of monetary investments or incurs damages which would have been prevented if the plaintiff had filed suit earlier."[28] "[C]ourts must look for a change in the economic position of the alleged infringer during the period of delay."[29] The Creditor argues that allowing cram-down at this point is prejudicial because the "Debtors have paid less than half of the loan since its inception in 2001, have been given a loan modification,[30] protected the house from foreclosure through two bankruptcy filings, presented six plans that proposed to pay Creditor, and requested that [the] plan be confirmed 26 times."[31] The Creditor further argues that the Debtors' personal liability on the debt was discharged in the first bankruptcy, [32] and asserts that "[i]t is highly prejudicial to Creditor to allow Debtors to renounce responsibility on a lien [that], while matured, is not even close to being paid off."[33] The Creditor's asserted prejudice arises from being prevented from

---

[27] *Id.* at 208.

[28] *Id.* at 208-09.

[29] *Id.* at 209.

[30] The parties' briefing indicates that the loan modification occurred prior to the first Chapter 13 bankruptcy filing and could not be considered an action taken during the period of delay in this bankruptcy case.

[31] Creditor Brief, Docket No. 108, p. 9.

[32] *Id.*

[33] *Id.* p. 10.

collecting a debt because the Debtors are asserting their rights under the Bankruptcy Code. There is no indication of undue or material economic prejudice that occurred during the period of delay in the current bankruptcy case.  Accordingly, the Creditor's equitable defense of laches is rejected.

The Court turns now to the threshold legal issue the parties asked the Court to address: whether the Creditor's matured second mortgage can be crammed down in the Debtors' Chapter 13 Plan.[34]

Bankruptcy Code § 1325(a)(5) governs the manner in which a debtor may modify "allowed secured claims" in a Chapter 13 Plan.[35]  "The phrase 'allowed secured claim[s]' is a reference to 11 U.S.C. § 506(a), which has been interpreted as providing that 'a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured.'"[36]  Thus, "Section 1325(a)(5) is recognized as the source of a Chapter 13 debtor's authority to bifurcate secured claims and "strip down" the value of the [secured] claim to an amount equal to the value of the collateral."[37]

A Chapter 13 debtor's ability to "cram down" a secured claim, however, is limited by Bankruptcy Code §1322(b)(2), which "expressly prohibits" modifying claims secured only by a security interest in the debtor's principal residence.[38]  In other words, Section 1322(b)(2) creates

---

[34] *See* Scheduling Order, D.I. 103. ("The Court shall first address the threshold legal issue via briefing by the parties.  The threshold legal issue is whether the Creditor's matured second mortgage can be crammed down in the Debtor's [*sic*] Chapter 13 Plan. (*see, e.g.*, without limitation, 11 U.S.C. § 1322(c)(2), 11 U.S.C. § 1325(a)(5), 11 U.S.C. § 506(a)(1), and *Hurlburt v. Black*, 925 F.3d 154 (4th Cir. 2019)").

[35] 11 U.S.C. § 1325(a)(5); *Am. Gen. Fin., Inc. v. Paschen (In re Paschen)*, 296 F.3d 1203, 1205-06 (11th Cir. 2002).

[36] *Paschen*, 296 F.3d at 1206 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 238-39, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).   *See also First Union Mortg. Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 470 (6th Cir. B.A.P. 1998) ("The Supreme Court has recognized that under-secured claims are split by § 506(a) and then can be 'crammed down' in a Chapter 13 case by § 1325(a)(5)").

[37] *Paschen*, 296 F.3d at 1206 (citing *In re Young*, 199 B.R. 643, 647 (Bankr. E.D. Tenn. 1996) ("The very essence of a § 1325(a)(5) modification is the write down or 'cramdown' of a secured claim to the value of the collateral securing the debt.").

[38] 11 U.S.C. § 1322(b)(2); *Paschen*, 296 F.3d at 1206.

an exception to the debtor's § 1325(a)(5) cramdown power by excluding claims secured solely by a mortgage against the debtor's principal residence.[39]

Here, the Debtors assert that the "exception to the exception" found in Bankruptcy Code § 1322(c)(2) allows cramdown of the Creditor's claim. Section 1322(c)(2) provides in pertinent part:

> (c)    Notwithstanding subsection [1322](b)(2) and applicable non-bankruptcy law -
> . . .
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

Courts have determined that the plain language of § 1322(c)(2) "except[s] certain short-term mortgages from the general rule prohibiting the modification of claims secured only by an interest in a debtor's primary residence in a Chapter 13 proceeding."[40]  The statute's prefatory phrase "[n]otwithstanding subsection (b)(2)" demonstrates congressional intent to remove the class of claims falling within subsection (c)(2) from subsection (b)(2)'s anti-modification provision.[41]  Moreover, the phrase allowing a plan to modify claims "pursuant to section 1325(a)(5)" "is an explicit statement of § 1322(c)(2)'s purpose: claims that fall within its ambit are subject to bifurcation into secured and unsecured parts, with the unsecured portion subject to 'cramdown' pursuant to § 1325(a)(5)."[42]

---

[39] *Paschen*, 296 F.3d at 1206 (citing *Nobelman v. Am. Savings Bank*, 508 U.S. 324, 331-32, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)).

[40] *Paschen*, 296 F.3d at 1207.

[41] *Paschen*, 296 F.3d at 1207.  *See also Hurlburt v. Black*, 925 F.3d 154, 162 (4th Cir. 2019), *overruling Witt v. United Cos. Lending Corp. (In re Witt)*, 113 F.3d 508 (4th Cir. 1997); *First Union Mortg. Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 470 (6th Cir. B.A.P. 1998).

[42] *Paschen*, 296 F.3d at 1208 (citing *Eubanks*, 219 B.R. at 471-72).

The parties do not dispute that the Creditor's mortgage is secured only by real property that is the Debtors' principal residence and, further, that second mortgage's maturity date of August 6, 2018, fell "before the date on which the final payment under the plan is due."[43] Accordingly, the Creditor's secured claim falls within § 1322(c)(2) and may be bifurcated under § 1325(a)(5) and § 506(a).

## Conclusion

For the foregoing reasons, the Creditor's defenses to the Claim Objection based on collateral estoppel, *res judicata*, and laches are denied.  Further, as to the threshold issue identified by the parties, the Court concludes that the Creditor's secured claim falls within § 1322(c)(2) and may be crammed down under § 1325(a)(5) and § 506(a).  Further proceedings are likely necessary to determine the value of the Property for purposes of § 506(a).

The parties shall confer and submit an appropriate Order consistent with this Opinion within 14 days of the date hereof.

FOR THE COURT:

Brendan Linehan Shannon
United States Bankruptcy Judge

Dated:    August 18, 2021
          Wilmington, Delaware

---

[43] 11 U.S.C. § 1322(c)(2).

11